Kenneth NEUMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–96–00417–CR.

Court of Appeals of Texas, Austin.

Aug. 28, 1997.

Order Overruling Rehearing Sept. 25, 1997.

Linda Icenhauer–Ramirez, Christian A. Hubner, Icenhauer–Ramirez & Hubner, P.C., Austin, for Appellant.

Ronald Earle, Dist. Atty., Jay Adkins, Asst. Dist. Atty., Austin, for Appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

PER CURIAM.

On the night of January 27, 1996, at an Austin intersection, appellant drove his pickup truck into the side of an automobile driven by his wife, Cynthia Neuman. The impact caused considerable damage to both vehicles, and Cynthia sustained blows to the head and shoulder. Based on this incident, a jury found that appellant intentionally, knowingly, or recklessly caused bodily injury to Cynthia Neuman with a deadly weapon, his truck. Tex. Penal Code Ann. § 22.02(a)(2) (West 1994). The jury assessed punishment, enhanced by two previous felony convictions, at imprisonment for forty-five years.

In his only point of error, appellant contends the district court erred by permitting the State to introduce in evidence a tape recorded telephone call from appellant to his wife on December 25, 1995, one month before the offense. Appellant's message for his wife was, "Say your prayers, bitch, cause you're fucking dead."[1] Appellant objected that this recording was evidence of extraneous misconduct of which he had not been given the requisite notice. Tex.R.Crim. Evid. 404(b). The only issue raised on appeal is whether the court correctly concluded that adequate notice was given.

█ Evidence of other crimes, wrongs, or acts of the accused, if relevant to an issue other than character, is admissible provided, upon timely request by the accused, reasonable notice is given in advance of trial of the State's intention to introduce the evidence in its case in chief. *Id.* Six weeks before trial began, appellant filed a written "motion for notice of extraneous conduct" and served a copy on the prosecuting attorney. *See Espinosa v. State,* 853 S.W.2d 36, 38 (Tex.Crim. App.1993). The motion was granted by the district court. Two weeks later, the State filed its written notice of intent to introduce evidence of extraneous offenses. By this notice, the State informed appellant of its intention to introduce evidence of numerous offenses, both adjudicated and unadjudicated, committed by appellant. The threatening telephone call was not mentioned in this document.

The first day of trial was devoted to jury selection. The following day, before the first witness was called, defense counsel informed the court that she "received notice yesterday morning about 9:30" that the State intended to introduce the recorded telephone call. Counsel objected to the admission of the recording, complaining that she "did not receive notice of their intent to introduce this extraneous offense.... The notice that I received did not mention anything about either terroristic threat or harassing communications." The prosecutor replied, "It was in there, and it was in the file. She's been given the entire discovery, the entire file. The tapes have been in the file from the get-go." The prosecutor argued further:

> [S]he was provided a list of all the calls that he made to the house, which were documented by the victim, all of the letters the defendant has written, as well as the tapes.[2] There was open file discovery. In fact, I urged her to listen to these tapes. I called Friday. I called Monday. I talked to her Monday in court and brought the tapes with me so that she could listen to them, offered to stay last night so she could listen to them, came in early this morning. She was going to be there at 8:00 to listen to them. She never came.

> THE COURT: Is there anything the state has stated that's incorrect? Just yes or no.

> [DEFENSE COUNSEL]: Not in fact, Your Honor. However, reasonable notice would provide me time to get over there.

1. The recording was not transcribed by the court reporter when the tape was played for the jury and we take the quotation from the State's brief.

2. The list of telephone calls mentioned by the prosecutor does not appear in the record.

I did call last night trying to get over to the office.

THE COURT: You didn't have open file discovery?

[DEFENSE COUNSEL]: Yes, sir, we had open file discovery. The formal notice of intent to introduce evidence of extraneous offenses did not give me specific notice that this was going to be introduced. There's a lot of things in that file that could have been on this list that have not been on the list. I relied on the list to tell me which—

THE COURT: All right. That's overruled.

Appellant relies on the opinion in *Buchanan v. State*, 911 S.W.2d 11 (Tex.Crim.App. 1995). In that case, the Court of Criminal Appeals held that a prosecutor's open-file policy did not comply with rule 404(b)'s notice requirement. The court wrote:

> We cannot conclude that the mere opening of its file containing an offense report detailing extraneous evidence satisfies the requirement of giving notice of "intent to introduce" such evidence. The mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an "intent to introduce" such evidence in its case in chief.

*Id.* at 15.

█ In light of *Buchanan*, we agree with appellant that merely by opening its file to the defense, the State did not give appellant reasonable notice of its intention to introduce in evidence any of the material contained or referred to in the file. That the file contained a list of telephone calls by appellant to his wife and a recording of the call in question did not alone satisfy the rule 404(b) notice requirement. At the same time, rule 404(b) does not specify the manner of giving notice and we do not believe that the State's failure to include the recorded telephone call in its written rule 404(b) notice necessarily barred introduction of the evidence. Thus, we must examine the record to determine if it otherwise reflects that appellant was given reasonable notice in advance of trial of the State's intent to introduce the threatening telephone call.

From the statements by the two attorneys quoted above, we glean that the State first attempted specifically to bring the recorded telephone message to the attention of defense counsel on the Friday before trial began. Apparently, defense counsel was first told that the State intended to introduce the recording on the following Monday morning, the day jury selection began. Keeping in mind that the defense had requested notice pursuant to rule 404(b) six weeks earlier, we must conclude that the State did not give appellant reasonable notice in advance of trial of its intent to introduce the threatening telephone call. *See Hernandez v. State*, 914 S.W.2d 226, 234 (Tex.App.—Waco 1996, no pet.) (defendant requested notice ten months before trial; State gave notice three days before trial; reasonable notice not given); *Self v. State*, 860 S.W.2d 261, 264 (Tex.App.—Fort Worth 1993, pet. ref'd) (defendant requested notice nineteen days before trial; State gave notice eleven and five days before trial; reasonable notice given). To hold that the State complied with the rule 404(b) notice requirement under the circumstances presented would effectively nullify the rule. The district court erred by ruling that adequate notice was given.

The State urges that the error was harmless. *See* Tex.R.App. P. 81(b)(2). It first argues that the prosecutor did not deliberately violate rule 404(b), but instead believed in good faith that the open-file policy satisfied the notice requirement. *Buchanan* was decided by the Court of Criminal Appeals in November 1995. Appellant's request for notice pursuant to rule 404(b) was made in May 1996. While we do not doubt the prosecutor's good faith, she should have known in light of *Buchanan* that defense counsel's access to the State's file was not sufficient in itself to satisfy the notice requirement.

█ The remainder of the State's harmless error argument reduces to a contention that the threatening telephone call was of minimal importance given the other evidence in the case. There was no serious dispute that appellant deliberately collided with his wife's automobile. Instead, the trial testimony centered on two issues: (1) whether ap-

pellant acted with the requisite culpable mental state and (2) whether appellant used his pickup truck as a deadly weapon.[3] Cynthia Neuman testified that appellant had damaged her car in November 1995, placing a dent in one of the doors at a time when she was not in the vehicle. During the month preceding the January 1996 incident, she received numerous threatening telephone calls from appellant, as many as twelve a day. Defense witnesses testified that appellant told them following the incident that he had intended only to damage Cynthia's car. Similar statements were contained in letters from appellant to his wife introduced in evidence by the State. A defense expert testified that, based on his analysis of the accident, the impact from the collision was below the threshold level for an "injury accident" as that term is defined by the National Highway Traffic Safety Administration.

In the State's opening argument at the guilt stage, the prosecutor argued with respect to appellant's state of mind:

> And I also want to remind you that when you are thinking about his intent, you can consider not just what happened on that day, but the other actions that you have heard about that are relevant to the issue of his intent. That nice phone ... call that he made on Christmas of 1995. And taking out the foul language it's: "Say your prayer. You're dead."
>
> And you also heard that he ran his car into her car when it was unoccupied, and that after he made the "say your prayers; you're dead" threat, he continued to threaten her over and over and over. And I submit that it's a reasonable deduction from the evidence that his running his car into her car wasn't enough. That apparently didn't get her attention. He was still angry. He was still in a rage. And that anger and rage culminated in the aggravated assault that took place on January 27.

In her argument, defense counsel suggested that appellant was angry and upset due to the breakup of his marriage. Frustrated by his wife's refusal to talk to him, he drove into her car intending to damage the car but without intending to injure her and without considering the possibility that injury could result. Counsel reminded the jury that the telephoned threat was made one month before the incident and argued that it did not accurately reflect appellant's state of mind on the night of the offense. According to counsel, on the night in question appellant did not use or intend to use his pickup truck in a manner capable of causing death or serious bodily injury.

In response to defense counsel's argument that appellant did not use his pickup truck as a deadly weapon, the prosecutor argued:

> No. This man wanted to hurt her. Last time he hit the car—had no effect. Yes, most reasonable people would get mad, get over it, and get on with their lives. Not this man. This man kept it up. Remember the testimony we have, this went on from November when he first hit the car through December 25th, when he called on Christmas and made such a wonderful statement, Christmas greeting, threatening her life, to when he went on and struck her car at midnight on a public roadway in an intersection.
>
> This man meant to try and kill her. Problem is, he failed in the execution. Yeah, the expert got up here and said, well, in the manner of its use he didn't do a very good job. However, the element is also intended use. It's in the manner of its use or intended use, was capable of causing death or serious bodily injury.

We agree with the State that there was ample evidence independent of the threatening telephone call on which to convict appellant of aggravated assault with a deadly weapon. When applying rule 81(b)(2), however, the question is not whether the properly admitted evidence was sufficient to support the jury's verdict, but whether the State has shown beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the verdict. *Griffin v. State,* 815 S.W.2d 576, 580 (Tex.Crim.App.1991).

---

**3.** The court's charge included an instruction on the lesser included offense of simple assault.

Tex. Penal Code Ann. § 22.01(a)(1) (West 1994).

In a case in which the primary question is whether the defendant intended to kill or injure the complainant, a tape recording of the defendant profanely threatening to kill the complainant one month before the offense is powerful evidence for the prosecution. Recognizing this, the prosecutors twice reminded the jury of the recorded threat during their closing arguments. Although Cynthia Neuman testified that appellant threatened her many times over the telephone during the weeks preceding the assault, the jury heard none of those threats. We are not convinced beyond a reasonable doubt that the other evidence of appellant's guilt was so overwhelming as to dissipate the error's effect on the jury's decision-making process. *See Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). The point of error is sustained.

The judgment of conviction is reversed and the cause is remanded for a new trial.

### ON STATE'S MOTION FOR REHEARING

In its motion for rehearing, the State argues for the first time that appellant waived the erroneous admission of the tape recorded threat because the same evidence was admitted without objection. Specifically, the State contends that the error was waived when Cynthia Neuman testified without objection that appellant made numerous threatening telephone calls.

The State relies on *Ford v. State,* 919 S.W.2d 107, 117 (Tex.Crim.App.1996). In that case, the defendant contended the trial court erroneously admitted a photograph of him wearing a long, dark coat taken at the time of his arrest. The Court of Criminal Appeals held that the defendant waived any error when he failed to object to testimony by the arresting officer describing appellant's appearance, including the coat, when arrested. The State also cites *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App.1990). In that case, the defendant objected to the admission of a transcript of grand jury testimony, but did not object earlier in the trial when the transcript was read to the jury. The court held that any error in the admission of the transcript was waived.

 In this cause, unlike *Ford* and *Johnson,* the substance of the challenged exhibit was not admitted in another form without objection. Cynthia Neuman testified that appellant made threatening telephone calls to her, but she did not relate the specific content of the calls. In particular, she did not testify that appellant told her, "Say your prayers, bitch, cause you're fucking dead." Appellant's failure to object to the general, nonspecific testimony regarding threatening calls did not waive his objection to the introduction of the recorded threat.

The motion for rehearing is overruled.