# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

============================

## ON MOTION FOR REHEARING

============================

## NO. 03-05-00371-CR

**Shabrun Antwone West, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 04-767-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated July 18, 2008, and substitute this in their place. We overrule appellant's motion for rehearing.

A jury convicted appellant Shabrun Antwone West of aggravated sexual assault and sentenced him to 65 years' imprisonment. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2008). In three issues presented, appellant argues that (1) the State improperly prosecuted him under the wrong legal theory alleged in the indictment, (2) the trial court erred by admitting a hearsay statement, and (3) the trial court erred during the punishment phase by admitting evidence of a prior bad act. We affirm the judgment.

## BACKGROUND

On the evening of July 22, 2004, appellant and some of his friends met the 14-year-old complainant C.H. and some of her friends at the Alexan Apartments swimming pool. After swimming and talking pool-side, the group went to the hike-and-bike trail near the apartment complex to drink some alcohol. They all returned to the pool area afterwards. Shortly thereafter, someone spotted a police car. Because of the underage drinking, everyone scattered. Appellant grabbed C.H. and they ran off to the nearby hike-and-bike trail. C.H. testified that when she asked appellant to take her back to her friends or to her boyfriend's house, appellant sexually assaulted her.

C.H. testified that appellant beat her and threatened to kill her. She also testified that appellant forced her to manually stimulate him and then raped her. C.H. claimed she was screaming and crying for appellant to stop but appellant continued to threaten that he would kill her. C.H. was eventually able to break free and run to a nearby residence. She was later treated at the hospital.

A grand jury indicted appellant for aggravated sexual assault (count one) and sexual assault of a child (count two). *See id.* §§ 22.011, .021 (West Supp. 2008). The aggravated sexual assault charge claimed appellant "intentionally or knowingly caused the penetration of the female sexual organ of [C.H.], without her consent, by the defendant's penis, and the defendant by acts or words placed [C.H.] in fear that death, serious bodily injury, or kidnaping would be imminently inflicted on [C.H.]." The sexual assault charge claimed appellant "intentionally or knowingly caused the penetration of the female sexual organ of [C.H.], a child, with the defendant's penis." At trial, the State proceeded only on count one—aggravated sexual assault.

2

During the trial, Mary Levy, a sexual assault nurse examiner ("SANE"), testified over appellant's objections. She testified that she took an oral history from C.H. to help her determine the proper diagnosis and course of treatment and then performed the physical examination. Appellant objected to Levy's recount of C.H.'s oral history, claiming it was hearsay. The trial court overruled appellant's objection and admitted Levy's testimony of C.H.'s description of the assault:

> We were walking. He just started grabbing me. I tried to push him off and he threw me down on the ground and then I said 'No, no, no.' I was saying 'Why are you doing this? Get off me. Why are you doing this?' I just kept saying that. And then he said 'Pull off your pants.' And I said 'No.' And he was like, 'I'm known to kill. Just do as I say.' Then he started banging me on the head, banging my head against the ground over and over again, and pulled off my pants. And I was still fighting him while he was trying to pull off my pants. And then he took out his penis and he just said 'Whack it off for me.' And I just kept saying 'I don't know what you mean,' and he hit me on the face over and over again. He punched me in the eye and then he stuck his penis in my vagina, and then he just started thrusting, I guess, and then I — I don't know how long it was. He was covering my face and my mouth and saying 'I don't want you to look at me.' And then he told me to turn over on my stomach and I said no. I guess he just kind of gave up on that. Then I pushed him off really hard and ran, and then he just said 'Yeah, you better run.' When were laying down he went like that—"licking hand"—and put it down there on my vagina.'

Afterwards, C.H. testified. Appellant objected to her testimony, claiming that her description of the sexual assault would be an improper prior consistent statement with that given by Levy. The trial court overruled the objection, and C.H. testified about the sexual assault.

The jury found appellant guilty of aggravated sexual assault. Prior to the punishment phase, appellant objected to the admission of extraneous offense evidence the State intended to introduce during the punishment phase. Before trial, appellant filed a Motion to Disclose Other Crimes, Wrongs, or Acts, and the trial court ordered the State to provide appellant notice of such extraneous offenses no later than ten days prior to trial (the trial began on May 23, 2005). The State

3

filed its Notice of Intention to Use Extraneous Offenses and Prior Convictions on May 13, 2005. Five days later, on May 18, 2005, it filed two Supplemental Notices of Intention to Use Extraneous Offenses and Prior Convictions, listing appellant's previous conviction for telephone harassment, a pending felony offense of theft of a firearm, and two pending assault offenses against Elicia Middleton.[1]  The trial court permitted the introduction of one of the late extraneous offenses—one of the assaults against Middleton.

Middleton testified at the punishment phase.  She testified that after she met appellant at a club, they went to a friend's house, where appellant asked Middleton to have sex.  When Middleton said no, she testified that appellant struck her in the face, grabbed her from behind, punched her in the face, and struck her head with a gin bottle.  Middleton was able to break free from appellant and call 911.  She was treated at a local hospital.  Middleton admitted on cross-examination that she had a prior theft conviction and that she resided with appellant after the assault.

The jury sentenced appellant to 65 years' imprisonment.

## DISCUSSION

*Consent Issue*

In his first issue, appellant claims that his "conviction must be reversed and judgment of acquittal rendered because the State prosecuted [him] under the wrong legal theory alleged in the indictment by electing to try this case as an aggravated sexual assault without the person's consent,

---

[1] The State claimed that on May 17, 2005, it learned from a detective that appellant had some charges pending against him in Kaufman County.  The State had been trying for weeks to acquire additional information from the Terrell Police Department concerning pending charges against appellant because those did not appear on appellant's criminal history.

when the person was a minor who could not consent, instead of trying this case as an aggravated sexual assault of a minor, which does not require lack of consent as an element of the offense."

Penal code subsection 22.021(a)(1)(A)(i) provides that a person commits aggravated sexual assault if he "(A) intentionally or knowingly: causes the penetration of the anus or female sexual organ of another person by any means, *without that person's consent*," and aggravates his conduct by threatening the victim or placing her in fear of injury, death or kidnapping through words or acts; using or exhibiting a weapon; or drugging the victim. Tex. Penal Code Ann. § 22.021(a) (emphasis added). Appellant claims that the State improperly prosecuted him under this section because C.H., a minor, could not have legally consented. Rather, he claims he should have been prosecuted under subsection 22.021(a)(1)(B)(i), which provides that a person commits an offense if he "(B) intentionally or knowingly: . . . (ii) causes the penetration of the anus or female sexual organ *of a child* by any means" and does not require proof of lack of consent. *Id*. (emphasis added).

Appellant's argument is without merit. The State has the discretion to choose under which section of a particular statute to prosecute a defendant. *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (quoting *State v. Malone Serv. Co.*, 829 S.W.2d 763, 769 (Tex. 1992)). Here, the State chose to prosecute based upon a lack of consent rather than the victim's age. *See Hernandez v. State*, 861 S.W.2d 908, 909 (Tex. Crim. App. 1993). The plain language of section 22.011 provides that a person commits sexual assault if he (1) commits certain acts against a complainant without the complainant's consent or (2) commits the same acts against a complainant who is a child (*i.e.*, a person younger than 17 years of age who is not the spouse of the accused). *See* Tex. Penal Code Ann. § 22.011(a)(1), (2). The only difference between the two subsections is that the State need not prove that a child victim did not consent to the assault. *See id*. Section 22.021,

5

the aggravated sexual assault section, includes exactly the same provisions but includes a list of aggravating factors. *Id*. § 22.021(a)(1), (2). In choosing to prosecute under subsection 22.021(a)(1), the "without-consent" subsection of the aggravated sexual assault section, the State simply imposed an additional elemental burden on itself that was then determined as a matter of law by C.H.'s age. *See Fancher v. State*, 659 S.W.2d 836, 838 (Tex. Crim. App. 1983). The State's decision to impose on itself the necessity of addressing consent did not harm appellant.[2] As appellant concedes, a minor is legally incapable of consenting to sexual activity. *See Lewis v. State*, 191 S.W.3d 225, 228 (Tex. App.—San Antonio 2005, pet. ref'd). Therefore, the State could have simply proved that appellant engaged in the act alleged and relied solely upon the victim's age to prove her lack of consent. Instead, the State proved both that C.H. was younger than seventeen years *and* that she did not consent to the assaultive conduct. We overrule appellant's first issue.

*Statement to Sexual Assault Nurse Examiner*

In his second issue, appellant argues that the trial court erred by "admitting the complainant's hearsay statement to the [sexual assault nurse examiner], which was not a statement made for the purpose of medical treatment." Alternatively, appellant argues that if it is determined that the statement to the nurse examiner is admissible, "the complainant's live testimony which

_____

[2] Appellant argues it was "legally impossible for the State to prove that a minor could not give consent." Although it was legally impossible to prove that C.H. *did* consent, the corollary does not necessarily follow. By proceeding under section 22.021(a)(1)(A), the State had to prove that C.H. did not consent, but that element was established as a matter of law by her status as a minor. In other words, once the State proved that appellant committed the acts as alleged, it was legally impossible for appellant to *disprove* C.H.'s lack of consent, placing appellant in the same situation as if the State had simply proceeded under penal code subsection 22.021(a)(1)(B).

duplicated this statement should have been excluded as improper bolstering which was not admissible as a prior consistent statement."

C.H. testified that after she escaped from appellant, she ran to a friend's house and told her friend and his brother what had happened. It was about 2:00 or 2:30 a.m. by the time she made it to her friend's house. One of C.H.'s neighbors drove C.H. to Seton Northwest Hospital, where she stayed for about an hour. C.H. testified that at Seton Northwest, "[t]hey just put me in a bed and, like, put bandages on my cuts." She said that she spoke to several nurses and that the nurses took her vitals and put "alcohol or something" on her cuts. The nurses may have given her an icepack, but they did not ask her to remove any clothing and did not examiner her closely. She then went to St. David's, where she stayed for about three hours, was examined by Levy and underwent "a gynecology exam," and spoke to several police officers about the assault.

During the trial, nurse examiner Levy testified that she had extensive experience as a sexual assault nurse examiner and that she underwent specialized training to become a sexual assault nurse examiner. She explained that one of the first steps in a sexual assault investigation is the taking of a history for the purpose of medical diagnosis and treatment and that in a SANE exam, her "primary goal[] is patient care, to make sure that patient has no trauma that might need further medical treatment or medical intervention by a physician," and her second goal is to collect evidence. She also said that during a SANE examination, she takes the victim's statement of an assault because it helps her "in looking for that trauma" and in diagnosing and cataloging the victim's injuries for appropriate treatment. Levy also said that her job as a sexual assault nurse examiner requires her to record her recollections and make a report. After appellant's objections to Levy's testimony were

7

overruled, Levy read C.H.'s statement about the attack verbatim from Levy's medical report and described the injuries Levy observed during her examination of C.H.

We review decisions to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will not reverse a ruling that falls within the zone of reasonable disagreement. *Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim App. 2002).

Rule 803(4) provides an exception to the hearsay rule for "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid. 803(4). Courts have interpreted this exception to include statements by suspected victims of child abuse concerning the source of their injuries. *See Barnes v. State,* 165 S.W.3d 75, 82 (Tex. App.—Austin 2005, no pet.); *Burns v. State*, 122 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Gregory v. State*, 56 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd). The medical treatment exception assumes the patient understands the importance of being truthful with healthcare providers so as to receive accurate diagnosis and treatment. *See Beheler,* 3 S.W.3d at 182. Texas courts have adopted a two-part test for determining whether the Rule 803(4) exception applies: (1) the declarant must make the statement for the purpose of receiving treatment, and (2) the content of the statement must be such as is reasonably relied upon by a health care professional. *See Barnes,* 165 S.W.3d at 82 (statement made by child abuse victim to doctor admissible when conducted for legitimate medical examination).

Here, Levy testified that she met with and examined C.H. Levy explained that she took the oral history in order to accurately diagnose and treat C.H.'s injuries. Although no witness specifically testified that C.H. understood the need to be truthful, the trial court could reasonably have concluded this; C.H. was responding to questions from a health-care provider about her condition and the incident and there is no indication those statements were made in the presence of family members or law enforcement officers. C.H.'s statements to Levy were made while receiving medical care at the hospital, at a time when Levy had little information about what happened, and were consistent with the physical evidence. C.H.'s statements guided the medical examination and assisted Levy in knowing what to look for, where to look, and what tests to conduct. The mere fact that C.H. initially went to Seton Northwest, where she essentially received "triage" medical care, before going to St. David's for more thorough treatment, which was tailored to the needs of sexual-assault victims and provided within about four to five hours of the attack, does not undermine the reliability of C.H.'s report to Levy or render inadmissible Levy's testimony about C.H.'s statement or injuries. Based on the record before us, the trial court did not abuse its discretion when it concluded the hearsay exception for medical diagnosis or treatment applied.

Appellant also argues that if C.H.'s statement to Levy was properly admitted then C.H.'s "subsequent live testimony which repeated that information should have been excluded" as improper bolstering of Levy's testimony about C.H.'s statement about the attack. Rule 613(c) provides that a "prior statement of a witness which is consistent with the testimony of the witness is inadmissible except as provided in Rule 801(e)(1)(B)." Tex. R. Evid. 613(c). A rule 613(c) objection only applies to a witness's *prior* statement, not to in-court testimony. *See id.* In other words, a bolstering objection is appropriately made to a prior consistent statement introduced after

9

the witness's in-court testimony. Appellant instead complains that C.H.'s in-court testimony bolstered her "earlier-admitted hearsay statements in the SANE examination."**[3]**

Further, under rule 613(c), a witness's prior consistent statement is "inadmissible except as provided in Rule 801(e)(1)(B)," which provides that a prior consistent statement is not hearsay if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Tex. R. Evid. 613(c), 801(e)(1)(B). Appellant contended at trial that C.H. voluntarily performed oral sex on him, that there was no penetration, and that C.H. lied about having been assaulted. Because appellant attacked C.H.'s credibility, the trial court did not err in determining that her prior consistent statement to Levy was admissible.

No matter how we view this argument, the trial court did not abuse its discretion in admitting the testimony. We overrule appellant's second issue.

*Punishment Evidence*

In his third issue, appellant argues that the trial court "committed reversible error at the punishment phase of trial by admitting one of four late-noticed bad acts." Appellant argues that the admitted offense was harmful because "the offense was not disclosed timely and trial counsel did not have adequate time to prepare for this offense" which was "an important component of the State's punishment case" and was emphasized by the State during its punishment argument.

---

[3] If we construe appellant's complaint as arguing that the admission of C.H.'s medical records improperly bolstered her in-court testimony, the record does not indicate the State introduced the medical records for the sole purpose of enhancing C.H.'s credibility or the credibility of other evidence. *See Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993). Therefore, the trial court did not abuse its discretion in overruling appellant's bolstering objection.

A trial court has broad discretion to admit or exclude extraneous offense evidence. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). When determining whether a trial court erred in admitting evidence, we review the trial court's decision for an abuse of discretion. *Id.* Texas Code of Criminal Procedure article 37.07, section 3(g) provides that "on timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2008). Rule 404(b) requires that, on timely request, "reasonable notice" be given by the State of its intent to introduce evidence of other crimes, wrongs, or acts by the defendant. Tex. R. Evid. 404(b).[4] The reasonableness of the State's notice generally turns on the facts and circumstances of each case. *Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd).

Here, as in *Patton*, we find that it was not an abuse of discretion for the trial court to conclude that the notice was reasonable under the circumstances. In *Patton,* we held the trial court did not abuse its discretion in concluding that notice was reasonable when the State gave notice of its intent to introduce evidence of a conviction from another county two days before trial began, when the prosecutor first became aware of the conviction. *Id.* at 394; *compare with Neuman v. State*, 951 S.W.2d 538, 539 (Tex. App.—Austin 1997, no pet.) (harmful error and no reasonable notice when State notified defense counsel on day of trial of its intent to introduce recording of threatening

---

[4] Here, the State had been expressly ordered to give the defense at least ten days' notice. Five days prior to trial, it filed two Supplemental Notices of Intention to Use Extraneous Offenses and Prior Convictions. During a hearing on the matter, the State agreed not to introduce evidence of the telephone harassment conviction or the unadjudicated offense of theft of a firearm. The trial court permitted only evidence of one of the assaults against Middleton to be admitted.

telephone call from defendant to complainant when it was obvious from the circumstances that the State had been in possession of recording for some time). The record here indicates that the State provided supplemental notice to defense counsel as soon as it found out about the unadjudicated assault against Middleton. The record does not reflect that there was any lack of diligence by the State to discover the evidence. The State also provided the notice to defense counsel five days before trial, thus providing counsel an opportunity to prepare to defend against it. We find that the trial court did not err in admitting the extraneous offense evidence during the punishment phase.

Even if the court did err in admitting the extraneous offense evidence, we find that such error is harmless. The erroneous admission of evidence of an extraneous offense is not constitutional error. *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.) Accordingly, we must disregard the error unless it affects appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Roethel*, 80 S.W.3d at 281. In *Roethel*, we held that the harm resulting from a violation of the section 3(g) notice requirement must be analyzed in light of the statute's intended purpose, which is to enable the defendant to prepare to meet the evidence of other offenses or convictions. 80 S.W.3d at 281. Accordingly, we will examine the record to determine whether the lack of notice resulted from prosecutorial bad faith or prevented appellant from preparing for trial. *Id.* at 282.

We find no evidence of bad faith in the State's failure to provide timely notice. The record does not reflect that the omission was intended to mislead appellant or prevent him from preparing a defense. The State explained that it did not become aware of the assault until five days prior to trial when it received the offense report. It had contacted the Terrell Police Department several weeks earlier trying to obtain information about appellant, but had a difficult time getting

12

anyone to return its calls. The State explained that the extraneous offenses "were not present on Defendant's NCIC-TCIC because they had not served any of these warrants or I guess Kaufman County isn't very good about putting those things in there. We found out about them and turned that information over to Defense Counsel as quickly as possible."

Nor was appellant surprised by the substance of the testimony. The record reflects that defense counsel knew of the incident involving Middleton. During the hearing regarding the admissibility of the late-noticed extraneous offenses, defense counsel noted that Middleton was on probation for theft and that she moved in with appellant after the alleged assault. The record also reveals that appellant was given an opportunity to and did cross-examine Middleton about the assault. *See McDonald*, 179 S.W.2d at 578. Additionally, during closing argument at the punishment hearing, the State did not emphasize the offense involving Middleton. Finally, appellant has not shown how his defense was affected by the admission of the evidence or how his defensive strategy would have changed had the State timely informed him that it intended to introduce the evidence. We overrule appellant's third issue.

## CONCLUSION

We affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed on Motion for Rehearing

Filed: November 14, 2008

Do Not Publish

13