

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00158-CR

Clarence Edward **LIPPERT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 7076
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Patricia O. Alvarez, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: December 13, 2023

AFFIRMED

After a bench trial, the trial court found Clarence Edward Lippert guilty of sexual assault of a child and sentenced him to thirty years in prison. In two issues, he argues: (1) the evidence is insufficient to prove beyond a reasonable doubt that he caused penetration of the complainant's sexual organ, and (2) the trial court abused its discretion in overruling his objections to certain extraneous offense evidence. We affirm.

**BACKGROUND**

In a one-count indictment, the State alleged that on or about September 1, 2018, Lippert "intentionally or knowingly cause[d] the penetration of the female sexual organ of [the complainant] a child who was then and there younger than 17 years of age, by means of the sexual organ of [] Lippert." Lippert waived his right to a jury, elected a bench trial, and pleaded not guilty.

During the bench trial, the complainant, who was fifteen years old at the time of the offense, testified that on the night of August 31, 2018, Lippert had "intercourse" with her in the detached garage at Lippert's house. The complainant defined "intercourse" as "a penis inside your vagina." According to the complainant, both she and Lippert had consumed alcohol earlier that night.

Lippert's adult daughter testified that on the night of August 31, 2018, she heard loud music and moaning or crying coming from the garage and went to the garage to investigate. The garage door was locked so she looked through a small hole in the garage wall. When she looked through the hole, she saw Lippert and the complainant having sex. Lippert was seated in a chair with "his pants down below his ankles" and the complainant was naked and "riding" him. Lippert's daughter went to the house and awakened her mother. She told her mother that Lippert and the complainant were "F'ing" in the garage. Later that night, after the offense was reported to law enforcement, Lippert's daughter heard Lippert tell her mother, "I f**k up one time and you are going to ruin my life."

Lippert's wife testified that after her daughter woke her up and told her that Lippert and the complainant were having sex, she went to the garage, looked through the hole in the garage wall, and saw Lippert and the complainant having sex. Specifically, she saw Lippert's legs and the complainant "on top" "screwing the hell out of him." Lippert's wife watched briefly, then went to the garage door and pounded on it for a minute or a minute and a half. While she was pounding on the door, she heard Lippert say to the complainant, "Is there knocking? Is someone knocking?"

She then heard Lippert say to the complainant "not to tell them anything." The complainant then opened the garage door. By this point, both Lippert and the complainant were dressed. The complainant told her that she and Lippert were "just dancing."

Lippert's wife immediately called 9-1-1 to report the offense. After she placed the 9-1-1 call, she heard Lippert tell the complainant to "swear that we never done anything." Lippert also asked his wife why she had called 9-1-1 and told her that she was "f\*\*king his life up." Days later, Lippert admitted to his wife that he engaged in sexual intercourse with the complainant on the night in question and on two or three prior occasions.

Edward Hamilton, a law enforcement officer with the sheriff's department who responded to the 9-1-1 call, testified that Lippert's speech sounded "very slurred" and that it "appeared he could be intoxicated." Hamilton also testified that one of the deputies told him that Lippert was "extremely intoxicated." However, Wesley Rheinhardt, another law enforcement officer who was at the scene that night, testified that Lippert's speech was "normal," and even though Lippert kept saying that he was intoxicated, "he didn't show very many signs of it."

Lisa King, a sexual assault nurse examiner, testified that she interviewed the complainant four days after the offense, on September 4, 2018. According to King, the complainant told her that she and Lippert had sexual intercourse on August 31, 2018, and on three prior occasions.

The trial court found Lippert guilty of sexual assault of a child as charged in the indictment. *See* TEX. PENAL CODE § 22.011(a)(2)(A). Thereafter, the trial court held a punishment trial, at which Lippert pleaded "true" to two enhancement allegations in the indictment. The trial court sentenced Lippert to thirty years in prison. Lippert appealed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Lippert argues the evidence is insufficient to support his conviction because the State "did not prove beyond a reasonable doubt that [he] caused the penetration of [the complainant's] sexual organ."

**Standard of Review and Applicable Law**

"In jury trials and in bench trials, we view the evidence in the light most favorable to the verdict in order to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt." *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015). We must uphold the conviction if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). "We measure the sufficiency of the evidence against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument." *Edward*, 635 S.W.3d at 656.

"The evidence is sufficient to support a conviction, and thus the [] verdict is not irrational, if the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id*. at 655-56. "In reviewing the sufficiency of the evidence, we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*.

In support of his sufficiency argument, Lippert cites to section 6.04(a) of the Texas Penal Code, which states that "[a] person is criminally responsible if the result would not have occurred

but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *See* TEX. PENAL CODE § 6.04(a). "The scope of causation under the Texas Penal Code is broad, allowing courts to find causation where 'the result would not have occurred but for [the] conduct, operating either alone or concurrently with another cause.'" *Cyr v. State*, 665 S.W.3d 551, 557 (Tex. Crim. App. 2022) (quoting TEX. PENAL CODE § 6.04(a)). Thus, under section 6.04, Lippert's conduct did not have to be the sole cause of the harm. "Causation is established where the conduct of the defendant is the 'but for' cause 'operating alone or concurrently with another cause.'" *Cyr*, 665 S.W.3d at 557.

**Application**

Here, to prove that Lippert was guilty of sexual assault of a child as charged in this case, the State was required to prove that Lippert "intentionally or knowingly caused the penetration of the female sexual organ of the complainant, a child who was then and there younger than 17 years of age, by means of the sexual organ of [] Lippert."

On appeal, Lippert argues there is no evidence that he engaged in any act to cause the penetration of the complainant's sexual organ with his sexual organ. Specifically, he argues: "There is no evidence that he told or asked [the complainant] to do any act . . . [or] that he did any physical act to encourage [the complainant] to have intercourse or help the process along. The evidence is that he sat there intoxicated, looking lifeless, with his hands down his side and head down." Lippert claims that he is not arguing that the fifteen-year-old complainant could have consented to having sexual intercourse with him or that voluntary intoxication is a defense to the commission of a criminal offense. In support of his argument, Lippert directs our attention to parts of his daughter's testimony in which she described Lippert's appearance while seated in the chair in the garage as "laid back with his head back," "almost like he was passed out," "his arms were

down to his side," and "lifeless." He also directs our attention to the part of his wife's testimony in which she stated that, when she first confronted him in the garage, Lippert was "plumb out of it like he didn't know what he was doing." Finally, Lippert directs our attention to the part of Hamilton's testimony stating that Lippert appeared to be intoxicated on the night of the offense.

The fact finder is the sole judge of credibility, and it may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Rivera v. State*, 507 S.W.3d 844, 853 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). As the reviewing appellate court, we may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Therefore, the trial court, as the sole judge of the witnesses' credibility, was not required to believe the parts of the witnesses' testimony cited by Lippert. *See Rivera*, 507 S.W.3d at 853 (noting that the fact finder is the sole judge of credibility, and it may reject any part of a witness's testimony). And, even if the trial court did believe the cited testimony, it was not required to infer from it that Lippert did not cause the penetration of the complainant's sexual organ. In conducting a legal sufficiency review, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the conviction. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). "This standard tasks the [fact finder] with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Id*. "[W]hile [the fact finder] may not base [its] decision on mere speculation or unsupported inferences, [it] may draw reasonable inferences from the evidence." *Edward*, 635 S.W.3d at 655. Under the legal sufficiency standard of review, we presume that the fact finder resolved any inconsistencies in the evidence in favor of the conviction and we defer to its resolution of these matters. *Murray*, 457 S.W.3d at 448-49.

Viewing the evidence in the light most favorable to the conviction, we conclude the evidence is sufficient to support the trial court's determination that Lippert caused the penetration of the complainant's sexual organ. The fifteen-year-old complainant testified that Lippert engaged in "intercourse" with her on the night in question. The complainant defined "intercourse" as a penis penetrating a vagina. Lippert's daughter testified that she saw Lippert and the complainant having sex in the garage. She further testified that when she awakened her mother, she told her that Lippert and the complainant were "F-ing." Lippert's wife testified that on the night of the offense, she heard Lippert direct the complainant to "not tell them anything" and to "swear that we never done anything," Additionally, immediately after his wife called 9-1-1, Lippert told her, "I f**k up one time and you are going to ruin my life." Several days after the offense, Lippert admitted to his wife that he had engaged in sexual intercourse with the complainant on August 31, 2018, and on two or three prior occasions. The complainant told the sexual assault nurse examiner, King, that Lippert had engaged in sexual intercourse with her on August 31, 2018, and on three prior occasions. In sum, there was evidence of Lippert's conduct before, during, and after the offense which shows intent or knowledge of the prohibited act. Based upon the combined and cumulative force of the evidence, a rational fact finder could have found that Lippert knowingly or intentionally caused the penetration of the complainant's sexual organ as alleged in the indictment. We hold the evidence is sufficient to support the conviction. Lippert's first issue is overruled.

NOTICE OF EXTRANEOUS OFFENSES

In his second issue, Lippert argues that, during the guilt-innocence phase of the trial, the trial court abused its discretion by overruling his objections to evidence that Lippert had engaged in sexual intercourse with the complainant two or three times prior to the charged offense. Lippert objected to this extraneous offense evidence on the basis that the State failed to provide him timely

notice of it. The State concedes that it did not provide Lippert with timely notice of the extraneous offense evidence, but nevertheless urges us to overrule this issue because the error was harmless.

**Applicable Law**

Generally, evidence of extraneous offenses is not admissible at the guilt-innocence phase "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." TEX. R. EVID. 404(b)(1). However, extraneous offenses may be admissible for other reasons. TEX. R. EVID. 404(b)(2). Additionally, article 38.37 of the Texas code of criminal procedure provides an exception to rule 404(b)(1) in certain prosecutions, including prosecutions for sexual assault of a child. *See* TEX. CODE CRIM. PROC. art. 38.37, §§ 1(a)(1)(B), 1(b). Article 38.37 provides in pertinent part:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1)     the state of mind of the defendant and the child; and
>
> (2)     the previous and subsequent relationship between the defendant and the child.

*Id*. art. 38.37, § (1)(b). Article 38.37 requires the State to provide the defendant thirty days' notice before trial of its intent to introduce such evidence in its case-in-chief. *See. id*. art. 38.37, § 3. Rule 404(b)(2) requires the State, on timely request by a defendant, to provide reasonable notice before trial that it intends to introduce extraneous offense evidence in its case-in-chief. TEX. R. EVID. 404(b)(2). There is no bright-line rule as to the number of days or the amount of time that constitutes "reasonable notice" under rule 404(b)(2). Instead, the reasonableness of the notice is determined by all the facts and circumstances of the case. *See Sebalt v. State*, 28 S.W.3d 819, 822 (Tex. App.—Corpus Christi-Edinburg 2000, no pet.) (concluding trial court acted within its discretion in determining that three days' notice of State's intent to extraneous offense evidence

was reasonable under Rule 404(b)); *Neuman v. State*, 951 S.W.2d 538, 540 (Tex. App.—Austin 1997, no pet.) (concluding State's notice of extraneous offense evidence was unreasonable under Rule 404(b) when State provided notice on the morning of trial and the defendant's request for notice had been on file for six weeks).

The purpose of the notice requirements in rule 404(b) and article 38.37 is to prevent surprise and enable the defendant to meet the extraneous offense evidence. *Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005). "To preserve error regarding the State's failure to provide reasonable notice of its intent to use extraneous offense evidence, the defendant must request a continuance to mitigate the effects of surprise." *Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.) ("Having failed to [move for a continuance], Martin has waived any complaint that he was surprised by the State's [allegedly untimely] notice."). "The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise." *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982); *see Oprean v. State*, 201 S.W.3d 724, 730 n.10 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("[T]the trial court may always exclude the undisclosed evidence, but if he does not, any error in causing 'surprise' to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess.").

**Application**

The record shows that Lippert filed a request for notice of extraneous offenses under rule 404(b)(2) on June 29, 2021, which was about five weeks before trial. The State did not provide notice of the extraneous offenses in question until the evening of August 3, 2021, which was the evening before trial commenced. The State's notice was untimely under both article 38.37 of the and under rule 404(b). *See* TEX. CODE CRIM. PROC. art. 38.37, § 3 (requiring thirty days' notice before trial of the State's intent to introduce extraneous offense evidence in its case-in-chief);

*Neuman*, 951 S.W.2d at 540 (concluding State's notice of extraneous offense evidence was unreasonable under rule 404(b) when it was given on the morning of trial and the defendant's request had been on file for six weeks). When Lippert objected to the admission of the extraneous offense evidence, he did not request a continuance to mitigate the effects of any surprise. Lippert's failure to request a continuance to mitigate the effects of any surprise means that the error in overruling his notice objections was not properly preserved for our review. *See Martines*, 371 S.W.3d at 249; *Martin*, 176 S.W.3d at 900.

But even if the error had been properly preserved for our review, we would hold that it is harmless. The admission of extraneous offense evidence without proper notice is non-constitutional error subject to a harm analysis under rule 44.2(b), which provides that any non-constitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b); *Martines*, 371 S.W.3d at 249. Generally, "the [r]ule 44.2(b) harm standard is whether the error in admitting the evidence 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Hernandez*, 176 S.W.3d at 824 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). However, the court of criminal appeals has held that this test "is not helpful in evaluating error in non-jury proceedings." *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002).

The court of criminal appeals has instructed that when analyzing the potential harm from a lack of notice of extraneous offenses, courts "look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005); *see Hernandez*, 176 S.W.3d at 825 ("We agree that the purpose of the [r]ule 404(b) notice provision of preventing surprise is a valid consideration in conducting a [r]ule 44.2(b) harm analysis."). Here, when Lippert objected in the trial court, he did not argue that he was surprised by the extraneous

offense evidence, or that it would undermine his ability to mount an adequate defense. Additionally, Lippert did not request a continuance to re-evaluate his trial strategy. On appeal, Lippert vaguely states in his brief that the extraneous offenses "caused surprise" to him, but he does not argue that his defensive strategy would have changed had the State provided him timely notice of the extraneous offense evidence, or that the State's belated notice of the extraneous offense evidence affected his ability to mount an adequate defense. *See McDonald*, 179 S.W.3d at 578-79; *Martines*, 371 S.W.3d at 249-50. Our review of the record shows that Lippert had an opportunity to cross-examine each of the witnesses who testified about the extraneous offenses. On this record, we cannot say that Lippert was harmed by the overruling of his notice objections. *See McDonald*, 179 S.W.3d at 578-79 ("Because notice as to the extraneous misconduct at issue would not have affected the appellant's trial strategy, we conclude that the error [was harmless]."); *Hernandez*, 176 S.W.3d at 825-26 (concluding the appellant was not harmed when he made "no argument that, because of the State's failure to give him notice, he was unable to prepare his defense in this particular case."); *Martines*, 371 S.W.3d at 250 (concluding the error was harmless "[b]ecause appellant has not demonstrated that the State's failure to give reasonable notice of the extraneous offenses would have affected his trial strategy.").

To the extent Lippert argues he was harmed because the State mentioned the extraneous offense evidence during closing arguments and the trial court stated during the punishment trial that its finding of guilt was based in large part on Lippert's own statements about the extraneous offenses, these considerations are not pertinent to our harm analysis. *See McDonald*, 179 S.W.3d at 578. But even if these considerations were pertinent, we reject Lippert's arguments and his characterizations of the record. First, although the State mentioned the extraneous offenses during closing arguments, it did not emphasize them. Instead, during closing arguments, the State focused on the testimony about the charged offense provided by the complainant and the two eyewitnesses.

Second, the trial court did not state that its finding of guilt was based on Lippert's own statements about the extraneous offenses. Rather, the trial court stated: "I have found Mr. Lippert guilty of this offense, and in large part not only based on all the evidence we had at trial, but a big part of that was his own words." Thus, the trial court stated that he was persuaded by Lippert's "own words" in general, which included his statements directing the complainant not to tell anyone what had transpired between them, and his statement to his wife, "I f**k up one time and you are going to ruin my life."

Because the error in overruling Lippert's lack of notice objections did not affect a substantial right, it is harmless. *See* TEX. R. APP. P. 44.2(b); *McDonald*, 179 S.W.3d at 578-79; *Hernandez*, 176 S.W.3d at 825-26; *Martines*, 371 S.W.3d at 250.

We conclude that Lippert's complaint about the State's untimely notice of extraneous offenses was not properly preserved for appellate review, but even if it had been properly preserved, the error is harmless. Lippert's second issue is overruled.[1]

## CONCLUSION

The trial court's judgment of conviction is affirmed.

Liza A. Rodriguez, Justice

DO NOT PUBLISH

---

[1]In arguing this issue, Lippert also states that the extraneous offense evidence should not have been admitted because of the trial court's ruling on his motion in limine. Because Lippert cites no legal authority to support this argument, it is inadequately briefed and we do not address it. *See* TEX. R. APP. P. 38.1(i) (stating that an appellant's brief must contain appropriate citations to authorities).